The 4th District Appellate Court of the state of Illinois has now convened the Honorable Thomas M. Harris presiding. Good afternoon council on the record in 4 cases, consolidated cases, they all begin with the numbers 4-22. Those are cases 0930, 0931, 1053, 1054. And caption NRA CAL E minor and NRA CAS E a minor. Council, could you please state your appearances for the record? Brendan Kaver for the appellants. Catherine Fort for the Appellee Traditional Council of Togiak. Thank you. Mr. Kaver, you may begin your argument. Thank you. The Illinois court in this case was commandeered by an unconstitutional federal law known as the Indian Child Welfare Act. Indian Child Welfare Act has no constitutional basis or grant of authority. Ostensibly, the purpose of the Indian Child Welfare Act was designed in part to prevent the wholesale theft of Indian children from being adopted into white families without regard to their cultural or other heritage. This instance in the case before your honors, the cases before your honors, involves the exact opposite of the desire or the expressed intent in the enactment of the Indian Child Welfare Act. Here, the purpose of the Indian Child Welfare Act has been perverted such that these children are being attempted to be taken to a place that they do not know, the only basis of which is that they share DNA with a member or a person who ostensibly could be a member of an Indian tribe. This is a circumstance where even if there was a constitutional grant of authority that allowed Congress to enact a law, presumably for the purpose of avoiding Indian children being adopted by other types of families, that purpose is expressly what is being done in reverse in this case. Federalism at its core requires that a limited federal authority exist in the instance where states have reserved powers. Domestic affairs, child guardianship and custody, these are all reserved powers of the state. Other than claiming that Congress has the ability to legislate purposes of federal law to order state actors to compel individuals to enact or to enforce federal law, that is not the purpose and that is not the spirit of the federal system that we enjoy. We have states with reserved powers of guardianship and custody of children. Even to the extent that an argument could be made to suggest that Congress does have the ability to commandeer state actors to compel them to enforce federal law, the very absurdity that exists within the Indian Child Welfare Act, which expressly prohibits those same commandeered state actors from considering the best interest of the children in favor of this imagined purely jurisdictional argument that involves expressly the best interest of children, indicates the Indian Child Welfare Act, though maybe well intended, clearly overstepped its bounds, even if it had a valid grant of constitutional authority. In the cases before the court, these children have had foster parents who have cared for them for the majority of their lives. They do not know Native American culture. They certainly do not know a fishing village in the state of Alaska, which is probably a beautiful and wonderful place. But these children do not know it. They do not know the culture. They do not know the customs. They certainly do not know enough about it to make any sort of informed decision on the basis of their age. While... May I interrupt with a question? Are you challenging the constitutionality of the statute in this case? Yes, Judge.  Both, Judge. Even if it is only as applied to this case, it is an unconstitutional application. However, the grant of authority to Congress in order to legislate matters that exceed the bounds of the Constitution itself, even taking a broader approach where the application of jurisdiction has been made under color of the commerce argument, Congress had no ability to enact the Indian Child Welfare Act as it is attempting to be enforced in this case or on its face broader. Thank you. Your Honors, this is a matter of jurisdiction and the fact that jurisdiction does not exist. Even if it were jurisdictional, it is absurd in fact that it doesn't take into account the most obvious and the most important issue, which is the risk to children that they are harmed as a result of being taken from a family that they didn't ever know. As this is a matter on appeal, there are simply too many questions that exist, and this case should be remanded to the trial court for further proceedings. Even if this court were to... Let me pause right there and ask you, what would those further proceedings be in your judgment? Assuming I agree with you, what would you be asking the trial court on remand to do? First of all, to consider the fact that this is a circumstance where the parents themselves objected to Togiak being intervener in these cases. The trial court, in its well-intentioned order, decided that those objections, because of the passing of the parents, should not carry on further into these proceedings. That in itself is made as part of the record in the order, but there is nothing, no law that is cited to for that proposition. The parents' written objections, which were made a matter of record, should stand throughout the course of these proceedings and should be considered. That alone should be enough for the trial court to recognize that the parents' desires, much like a will or any other posthumous directive put in place by a parent with regard to their child, should be considered as an objection to the tribe having any control over these children's placement or guardianship in custody. The parents' objections and the purposes, therefore, may be able to be speculated about, but one of the most obvious matters that is of record before this court is that these minors don't have any actual knowledge of Togiak customs. They do not have any connection themselves other than a parent's DNA. Assuming for the moment that the ICWA is not unconstitutional, do those concerns you just cited, are they permitted to be made in trial court proceedings? In terms of the parents' objections, yes. No, not in terms of the parents' objections, just talking about your arguing that this isn't a good place for these kids who don't know anything about it and have never been there and so forth. Is that a factor which the trial court under the ICWA may consider? In terms of the parents' objections? No, not in terms of the parents' objections. Leaving aside the parents' objections for the moment. The Indian Child Welfare Act expressly prohibits the consideration of the children's best interests. And so, to the extent that those factors that Your Honor just mentioned are considered to be in the best interest of the child and considerations for further proceedings, the trial court would be prohibited expressly by ICWA from considering the children's best interests. One other question. You are attacking the constitutionality of ICWA both as applied and facially. How should the fact that the Illinois Supreme Court has addressed the ICWA case on its merits back in 1995 affect our assessment of your argument here? And I'm sorry, Your Honor, what specifically are you referring to? Well, the Supreme Court of Illinois addressed and applied ICWA in the decision in 1995, and I don't know whether or not anyone raised the constitutionality of it. But certainly the Supreme Court did not discuss it at all, Illinois Supreme Court. And doesn't that, in its absence, suggest that this statute is constitutional, at least in the eyes of the Supreme Court of Illinois? Insofar as the Illinois Supreme Court did not take up the issue of constitutionality, I can't speak to whether it had been raised in the briefing in that matter. However, simply because the Illinois Supreme Court 28 years ago didn't address it then, it should be able to be addressed anytime, especially under the facts of this case. Go ahead. Thank you. The purpose of the statute extensively was to prevent the adoption of Native children by other families. This was happening at such a rate and in such a magnitude that the federal government well-intendedly decided to enact this law in order to prevent what was occurring. The very fact that that was occurring and that that was seen as important enough to enact federal legislation to commandeer state courts, to compel state actors in order to prevent this from occurring, is exactly the reason we are here today. This is a circumstance where the Indian Child Welfare Act is being used in order to take these children ostensibly and move their guardianship and custody, removing jurisdiction entirely from a state court with reserved powers and the obligation to its residents, in order to, in any other matter involving child welfare, to consider their best interests. The fact that their best interests may not be considered by an ostensibly constitutional federal law is in itself a form of child neglect. Well, Mr. Caver, I mean, if there's venue disputes between courts, a venue wouldn't require consideration of the child's best interests either. It's something that's a precedent to the administration of the child welfare laws, right? That is correct. Why is this not analogous? We have to figure out the where before we figure out the what. Thank you. The fact that children's best interests, ICWA specifically, is surgically intended to address the placement of children. The placement of children can't be decided jurisdictionally unless it is done so with a consideration of the child's best interests. In other words, the proper jurisdiction of a court to make that determination has to, at some point, consider the child's best interests, even if it is couched, as it is with ICWA, only in the fact that they share DNA. That automatically means that it's best for the child for jurisdiction to be had by the tribe. This is a circumstance where we're dealing with where children are placed, where they are living. It can't be done. And jurisdiction itself, by ICWA, having been enacted in order to determine the guardianship and custody of children, that very fact that the legislative intent and the congressional intent by enacting ICWA was to maintain the best interests of the children because they were being removed wholesale from tribes, means that at some point, even though it's a condition precedent and even though we have to figure out the where before the why, it doesn't matter what we call it and it doesn't matter what words we use. At some point, there is a best interest determination, even if we're denying that that's what it is. We may disagree that the jurisdiction is itself a best interest consideration, but that's what ICWA says, is that the congressional intent and the legislative intent to have federal law to change the guardianship and custody of children who are native children is itself a best interest factor because of the very fact of the enactment of what ICWA tries to do. The very decision on appeal that's before this court is that the order transferring jurisdiction is actually what, even at its latest point, is actually what vested the winner's right to enter the case and to become parties in this case. That moment when the jurisdiction transferred was the very first time, at its very latest, that the winners could have actually asserted their rights to have this matter reviewed. In its brief, the tribe discusses that this appeal should be dismissed because the only way that ICWA is intended to function is to remove jurisdiction entirely from an Illinois court. The suggestion that an Illinois court, and this court specifically, cannot review the actions of a trial court would be unheard of. In other words, essentially what the tribe is arguing is that after the decision is made, as long as it applies ICWA and as long as the outcome of that decision was in favor of the tribe transferring jurisdiction, that it removes all ability of the winners to challenge or to review the decision of the trial court. That simply cannot be the case. The very decision that is before your honors that transfers jurisdiction is the decision that we are asking for this court to review and to remand back to the trial court. In response to the earlier justices question, what could the trial court do if the case were remanded? Additionally, that trial court could find that ICWA was unconstitutional and its ostensible grant of authority and its congressional intent to commandeer state actors is itself unconstitutional. In other words, there are many other instances where the federal government in this federal system uses its influence and its power to convince states that those state actors ought to do something that is in the interest of the federal government. For instance, when the federal government enacted legislation revoking highway funds for states that did not comply with a certain minimum legal drinking age, that was using the purse strings to compel the states to want to do something that federal legislation was consistent with. Here, there is no such carrot. Here, the federal law simply says, and it creates a whole set of obligations on the part of the Department of Children and Family Services, itself a government agency, with no funding, with only the directive itself, that these state actors are therefore compelled to provide reports, to provide documents within seven days upon requests of the tribe. These are all matters of guardianship and custody of children that are reserved to the states, and the federal government, even under ICWA, has no ability and no constitutional grant of authority to compel those state actors to do. The circumstances under which ICWA compels those state actors is precisely why those state actors can have, ought to, those state actors' decisions, like the state judge in this case, ought to be able to have their actions reviewed. And that is why, it is pretty clear, that's why the court in the trial court granted the motion by the state and the guardian ad litem who joined in my motion, granted the stay on the case, because even the trial court in this case understood that it was important to have the case reviewed. Therefore, the stay was enacted, even in light of the fact that the court had previously denied the witters recognition as intervenors in the case. So, I hope that addresses at least a little bit the other justices' question about what could be done on a remand in this matter. Thank you. I would reserve additional time for rebuttal. All right, Mr. Caver, you will have rebuttal argument. Ms. Fort, you may proceed. Good afternoon, your honors, and may it please the court. My name is Catherine Fort, and I represent the traditional village of Togiak, which is a federally recognized tribe in southwest Alaska. Both of the children in this case are Togiak tribal members, and as such, the Indian Child Welfare Act, or ICWA, applies to the case. As to Mr. Caver's argument regarding the constitutionality of the Indian Child Welfare Act, no court in 40 years has held that ICWA is unconstitutional. While the Supreme Court is currently hearing a case involving the Indian Child Welfare Act, the issue we're discussing here today is jurisdiction, or the decision to make the decision. Section 1911 of ICWA governs jurisdiction between states and tribes. There's no commandeering. This is simply an issue of preemption. It was passed pursuant to Congress's plenary power over Indian affairs, which has long been recognized in the United States Supreme Court and by Congress. The congressional intent behind passing ICWA specifically says it was passed pursuant to the trust responsibility between tribes and Congress, and that it does, in fact, stand for the purpose that the best interests of the children are served by following ICWA, not attempting to evade it. Since we're talking about jurisdictions, the tribe today would very much like to talk about jurisdiction and answer any questions you may have about ICWA's application. But we're here today to request that this court affirm the lower court's decision and lift the stay so that the tribal court can exercise its proper jurisdiction. Counselor, I have a question. Yes, Your Honor. The parents of the children executed, I believe in July, written objections to the tribe taking part or getting involved with regards to their children. And they subsequently died a few months later, so that neither of them are currently alive. If either of them had not died and their written objections stood and were not rescinded, would that be the end of the tribe's efforts to have jurisdiction transferred? So, Your Honor, the written objection, the parents would have to renew their objection upon the petition. The plain language of the law says that the parental objection can only happen upon petition. So, assuming that the tribe petitioned for a transfer of jurisdiction and the parents were alive and objected, then the case would stay in state court at that point. Yes. So, it's your position that by filing an objection before the petition to transfer was made, that a written objection would be rendered ineffectual? Yes, Your Honor, for a couple of reasons. The first reason is that the tribe was due notice under 1912A of ICWA at the first moment that the court was aware that these children may be or are likely Indian children. So, we know then that when the parents effectuated this document, which they did when they were unrepresented, which is also in violation of ICWA, that we have a situation where the parents are objecting to jurisdiction prior to the tribe even receiving notice of this happening, which makes this objection void. Why is that? I'm not sure if, as here, apparently there had been involvement of the tribe in the past with these children, and there's new juvenile court proceedings and the parents say, by the way, I don't want the tribe involved, I don't want my jurisdiction transferred from the juvenile court to the tribal court. Why is that rendered null and void? Why can't they foresee that coming and say, and I want to stop it? Because Congress was particularly concerned with the vulnerability of parents, exactly like these parents here today, who clearly had a number of issues. And that vulnerability means that they're subject to be objecting to proposals in front of them, such as not transferring a case to tribal court without counsel, and before the tribe has even petitioned. Congress provided nothing in the statute that specifically prohibits. It says upon the petition that an objection has to happen upon petition of either parent or the Indian custodian or the Indian child's tribe. There's no petition for transfer prior to this objection being filed. It's the intent of Congress to render it void and nugatory if the parents see a petition coming and filed in advance? Yes, under 1914, any violation of 1911, 1912, or 1913 are void if they've been violated. So you do have a situation here where we have numerous violations of the Indian Child Welfare Act. In this case, notice being one of them, appointment of counsel to the parents to the other, and then the written objection of the parents prior to the petition. What is the language about how counsel must be appointed for the parents before their objections can be rendered meaningful? No, under 1912, indigent parents have to have counsel for the pendency of the entire Indian Child Welfare Act case. In this case, the parents were unrepresented throughout the case. The parents were signing this document, which I would say also doesn't survive their death. We have a great deal of legislative history on why we have a parental objection versus any other party. No other party in ICWA is allowed to object to a transfer of jurisdiction except for parents. That was specifically because the Department of Justice was concerned with non-Indian parents having to go to tribal court. So Congress inserted that objection in. May I interrupt? Yes, Your Honor. I'm sorry, bookmark where you're at and continue responding to Justice Steigman's questions here. But just simply as to that point, isn't the guardian ad litem allowed to object? The guardian ad litem does not have a veto objection. So in ICWA under 1911B, if the parent objects and is alive and objects upon petition, then the case will stay in state court. A guardian ad litem would have to demonstrate a good cause reason that the case cannot be transferred to tribal court. So they absolutely can, as they did here, demonstrate, make an argument that there is a good cause reason not to transfer a case to tribal court. But the guardian's objection to that transfer is not an automatic veto. A trial court, as they did here, can consider those good cause reasons why not to transfer and decide to transfer the case instead. Is that an issue for the trial court or the tribal court if the GAL objects? Well, Your Honor, in this case, when we were in trial court, the GAL objected and the trial court here did consider those objections. You're right, though, in that today, jurisdiction over this case should be in tribal court. When the trial judge issued his non-final order on August 12th, he wrote a long, well-considered order and then noted that it would become final on September 15th and that any aggrieved attorneys should be ready the very minute the order drops to file any motions for reconsideration or a stay or an appeal. That order dropped on September 15th. In it, it dismissed the cases. It says the case was transferred to tribal court. The tribal court accepted jurisdiction on October 12th. If any of the aggrieved attorneys had decided to do what the trial court asked them to do, which is file their stay, make a motion for an appeal the day that dropped, then the state court would continue to have jurisdiction. Unfortunately, or fortunately, the tribal court accepted jurisdiction on October 12th. The foster parents did not file anything until October 13th. So the jurisdiction transferred on October 12th in this case. You mentioned about the, how the parents must have lawyers before their objections can be accepted. Is that your position? My position is that the parents should have had, sorry. Is that in the statute that they have to, before an objection of a parent to transfer to a tribe can be effectuated, that they have to have counsel? In the statute, it says that they have to have counsel for an Indian Child Welfare Act child custody proceeding. So this would be part of the proceeding. So I would argue that- That's assuming it's already been transferred there. I mean, this is still an Illinois Juvenile Court Act. Yes, and ICWA still applies. Your position is that that's a statute which says an objection isn't effectual unless at the time of making the objection, the parents had counsel? I am saying that the parents should have had counsel at the adjudicatory hearing, at which time they signed this document. They did not have counsel. And so, yes, I would say that they need to have counsel. I don't recall that coming up, and I don't recall that discussion. I may have missed it. I don't recall that in your brief or the argument. But the other aspect of it is we're all familiar with juvenile court proceedings, and parents always have counsel. Yes. Do they not in this case? And I don't remember that being an issue. They appear to be unrepresented in this case, which I was very surprised by as well, Your Honor, because in every other court I've appeared in, parents are regularly represented. But in the briefing, it does mention that they were unrepresented. So, regardless- Who mentions that, and what does the record show? That they were unrepresented. Also, one other question about this. The trial court, in rejecting the parents' objection, said, essentially, they're dead, so their objections don't count anymore. Yes. What's the basis for that conclusion? The basis for that conclusion is that the insertion of the parental objection by Congress was a direct response to ensure that parents' due process rights, particularly non-Indian parents' due process rights, that they could stay in a state forum if they so choose. Once a parent has passed away, there is no due process right that survives. This is not a will or a last wish of a parent. This is an opportunity. Just a moment. Why isn't it? Why isn't it a recognition by Congress for the parents to express an objection, and for that objection to survive their death, as in a case like this, if they are specifically objecting to what happened here? And if you're correct, that that's how Congress intended, why didn't they put it in the statute? Because they have, after all, if your parental rights are terminated, it doesn't count. They could have added a subsection there and said, and by the way, if you're dead, then your objection doesn't count either. Well, Your Honor, I would argue that when a parent passes away, their parental rights are essentially terminated at that point. Are they not? They have no parental rights to protect. They have no due process rights. Well, but this is a question of their wishes for their children. We're dealing with a situation where you mentioned the will. As I'm sure you know, parents of young children often provided their will if we're killed in a car accident or whatever. Here's what we would like to have done with regard to who's going to be the custodian and guardian of our children and this trial judge who's dealt with that situation. I've really encountered a request that is, I've given, I've seen given more weight by judges than what the parents have thought should happen to their children when they die. And now you're telling me that, gee, under the ICWA, none of that counts at all. Your Honor, this isn't about the wishes for their children. This is about which court makes a decision, whether their parental rights are terminated, what the case plan will be. This is about the parents' rights in a child custody or child dependency proceeding. So when they're choosing a jurisdiction, they're choosing which laws should apply to the case. Why is it about the wishes for their children? Because it's about... But why does it say that this is a due process matter only involving the parents, as opposed to parents saying, I'm concerned about my kids. You know, I, and let's assume someone has terminal illness. You're saying that this is her, a mother's concerns while she's dying, about I don't want my kids going to tribal council is to be literally rejected as meaningless. Is that your position? Your Honor, when parents have been adjudicated in a state child dependency proceeding, they lose a great deal of rights. And so this is not the scenario that you're proceeding here. This is a scenario where the parents are deciding which laws apply to their child dependency proceeding, as in which court will make the decision. In this case, prior to the tribe's entrance into the case at all, the parents effectuated a document that for all intents and purposes, just shows that the state was well aware that the tribe should have been noticed long prior to this adjudication. The tribe didn't even receive notice. Yes, Your Honor. I'm sorry, but it was something that you said just a moment ago, in terms of, I think you were saying that the parents' interests aren't relevant there. But what's the point of the objection codified as part of the law that parents are allowed to object? What does that signify, if not the parents' interests? That's the parents' own legal interests. I was speaking about the concept or the idea that the other justice floated that this is about the parents' wishes for their children. The parents' own interests in their legal, in what laws are going to decide whether their rights are terminated, whether cases stay in the dependency proceeding, they have very strong interests in that. And that is why the Department of Justice in the legislative history pointed that out to Congress and why Congress inserted that. Those interests have to do with what laws we're talking about applying in a child dependency proceeding, which is all we're talking about here. Regardless of if this objection should survive their death, the objection was done in violation of the plain language of the statute. And so, if the parents had been alive, we don't know if the parents would object when the tribe was finally noticed and able to finally get their motion for transfer heard in front of the court. We do know that after the dad passed away, mom reached out to the tribe, she asked for assistance, and then she passed away, sadly, before we were able to know her feelings on transfer. Wasn't that evidence that the trial court rejected as being unfounded hearsay? It is in the record, and while the order said that it wasn't the strongest evidence, it is evidence that was in the record. And the judge in the lower court held that the objection shouldn't survive the parents' deaths for many of the reasons that I've spoken about here today. Did the judge mention anything about how they had to have lawyers when they made that determination? The judge did not mention that, Your Honor. Did the judge mention anything about how the parents, this was only to protect their due process interests, and once they're dead, they have no longer an interest? They did speak to the fact, the judge did speak to the fact that there was no reason why this objection should survive their death, and he also spoke to the fact that it violated the plain language of the law in his order that was filed on August 12th. Yes, Your Honor. Go ahead. Thank you. I think in this case, for the In Re Armel case, which was decided in Illinois' first district, is instructive. The fact pattern is very similar as it is here. We had a late notice, we had a transfer to tribal court. The court in that case, reading both the Supreme Court decisions, other court decisions, and the Illinois Supreme Court decision Your Honor mentioned, held that without a good cause exception, a case has to be transferred to tribal court. The case ICWA is not just about placement, and in fact, placement only occupies a very small piece of the total structure of the Indian Child Welfare Act. Armel discusses how important it is that cases get transferred to tribal court if there is no good cause exception.  Yes, Your Honor. I want to go back to a point you were talking about where the objections of the parents, if I understood you correctly, were executed in an adjudicatory hearing, and you raised some question about whether or not that was appropriate because they weren't represented by counsel in that hearing. But there's no requirement in the statutes as to when and where the objection is to be made by the parents, is there? No, there is a requirement. It has to be made upon petition of the transfer to tribal court. Let me be more clear. I mean, they could have done it in the lawyer's office. It didn't have to be part of a juvenile court proceeding, did it? Let me be clear. Is there anything in the statute which requires it to be in a juvenile court proceeding? It has to be in a child custody proceeding as defined by the law, which includes the juvenile court proceeding. If you're asking me if it has to be done in front of a judge, no. Where does it say that an objection by the parent has to be done in a juvenile court proceeding? ICWA only applies to child custody proceedings, which includes a foster care proceeding. So the parent can't sit in a lawyer's office and fill out an objection to the tribal's request? Without a proceeding happening, Your Honor? No, I mean, let's assume the tribe had made a request for transfer and the parents are sitting in their lawyer's office, a court-appointed council, and they fill out, they sign an objection there. That wouldn't count? No, that could be submitted to the court. Yes, Your Honor. You keep talking about it's got to be part of a juvenile court proceeding, and I want to know where in the statute it says so. I think there's just a miscommunication, Your Honor. When you said a juvenile court proceeding, I wanted to be clear that ICWA only applies to, in fact, juvenile court proceedings. So thank you. I see my time is up. I request this court lift the stay, uphold the lower court's decision, and allow the tribal court to exercise jurisdiction. Thank you, Your Honors. All right. Thank you, Ms. Ford. Mr. Caver, rebuttal argument. You're muted, Mr. Caver. My apologies. There are several of these issues that have been raised now in the appellee's argument. Before you begin, I want to get back to the question about representation. As you heard, Ms. Ford was arguing that the parents executed the objections at a juvenile court proceeding, and they weren't represented by counsel. I don't recall that from the record or anywhere else. Is she correct? And what's your recollection about all that? Judge, the parents, the record does, and I only came in at a very late stage, actually, a day before the filing of the pleadings to which the appellee's attorney references. The parents were pro se for the duration of the proceedings, if I recall correctly from my review of the record. However, a parent being given a court-appointed attorney is a state decision. In other words, the Illinois legislature has determined that in juvenile court act proceedings, that that is a provision that is offered to parents. What I would like to address, and I hope it addresses your honor's question, is that the fact that they executed objections, and they were pro se, has nothing to do with the fact that those objections didn't have a clear grant of the parents' desires. Well, the question is, as you heard counsel saying, well, it's got to be counsel for the parents, and I'm wondering about, one, is that true, and two, whether they had counsel, or three, if they're pro se, you're looking at a bunch of former trial judges, and we're familiar with juvenile court proceedings. And parents in juvenile court proceedings, as respondents, have the right to be represented by counsel, and if they can't afford counsel, have the right to have counsel appointed for them. I've done it dozens of times. So even if they appear pro se, I don't know that answers the question. Does the record show that they declined counsel? What do we know? Well, and if I may, and I don't mean to be flip with my response, I think it will illustrate what I'm trying to say. The term pro se is itself Latin for yourself, and one acting as one's counsel is acting pro se by definition. So whether or not there has to be a licensed attorney who advises an individual, that individual is acting pro se, the trial court has recognized an individual's right to self-representation under certain circumstances. The notion that part of the legislative intent was so paternalistic to suggest that a pro se litigant couldn't, him or herself, knowingly execute a written objection to the involvement of an Indian tribe with regard to their child, strains credibility. You can't, there may certainly be circumstances where a parent in a child custody proceeding should have experienced legal counsel to explain to them the ins and outs or exceptions or certain nuanced areas of the law. It's not the intention of this case to be transferred to an Indian tribe that they don't know anybody with a second or third grade education is going to understand at least what the bidding is and whether or not that's something that they're interested in doing. These are not, and these people, there is nothing in this record to suggest that these individuals were so unintelligent or uneducated as to not understand the very purpose of the written objection that they executed. In addition, a will, even though parental rights in due process may not exist past the point of death of a parent, certainly a parent's desires exist in a will, and certainly wills themselves exist as a written memorialization of a parent's desires for any number of things, for monetary issues, for where children go and who is to care for them. Certainly, this is a situation that is exactly akin to a will, where it doesn't have to be the right that lives on, it has to, it is a memorialization of the parent's intent. Child rearing is a fundamental liberty interest, recognized time and time again by the US Supreme Court. The notion that a parent's written objection to something... May I just ask you before your time runs out, was there ever a determination of indigency, which I think is a prerequisite to the appointment of counsel under the Act? I don't recall. I don't recall off the top of my head, I would have to review the record. Thank you. Justice Doherty, any further questions? No. All right. Thank you, Mr. Caver. Thank you, Ms. Fork. I should add, before we conclude, something I should have said at the outset, which was we apologize for getting started late with the argument in this case. We had some technical difficulties in the prior case that put us behind in schedule. But we thank you both for your argument here this afternoon. The case will be taken under advisement.